Good afternoon. Welcome, everyone, and counsel. Welcome to the James Browning Courthouse here in San Francisco. It's a pleasure to see you. This is the time set for the case of United States of America v. Gomez. Let me just check with Judge Gould. Judge Gould, can you hear me? I can hear you. Okay, great. Counsel, if you're ready to proceed, you may proceed. I am. Good morning, or good afternoon, Your Honors. My name is Todd Burns. I represent Jesus Gomez. The government argues that the panel's application of the pure question law test in this case conflicted with Rule 52's plain error rule and afforded Mr. Gomez relief that he would otherwise be barred from receiving under Alano's four-part test. That is incorrect. The application of pure question of law test here merely allowed the panel to do a more streamlined analysis than would otherwise be required under Alano's. Counsel, could you pull the mic a little closer to you? I'm not sure everyone can hear you back there. Sure. Application of the pure question of law test here merely allowed the panel to do a more streamlined analysis than it would otherwise have to do under Alano's four-part test, and that is entirely consistent with what the court did in Castillo, and it's also consistent with what the court did in its en banc opinion in Begay. And undertaking that more streamlined analysis does not offend Rule 52B or Alano, a conclusion that flows from the Supreme Court's treatment of plain error in the guidelines context. But isn't it just an end run around plain error? I mean, 51 says the rule about how you preserve a claim, and then 52 says a rule about what you do about claims that are not preserved, and it says plain error. So the rules don't provide for a third category. Well, I would suggest it's not an end run around the rule because if you apply the pure question of law test, the defendant can win, as in Castillo, or the defendant can lose, as in Begay. It just merely allows for a more streamlined analysis. But what's streamlined about it, or at least one of the things that's streamlined about it, is that you don't apply prong two, where you ask whether the error is plain, right? Well, that's correct. So you can call it streamlined, but there's the plain error test, and then there's not applying the plain error test, and what the panel did here under our precedent is not apply the plain error test, right? Well, I think my test varies from the guidelines context to generally. In the guidelines context, the Supreme Court has said that the plain error analysis applies differently. It said that in Molina-Martinez, and it said that in Rosales-Morales. This applies more to the third and fourth prongs of the Olano test, doesn't it? And not really tell us whether the error is plain. Well, specifically it does, but the framework that the Supreme Court sets out in those opinions certainly applies to whether or not the error is plain because what they've said is, look, our prior caution about affording plain error relief sparingly does not apply in the guidelines context, and the primary reason the court gave for that is that the balance between judicial efficiency and justice concerns is different because correcting a guidelines error or a sentencing error comes at a lot lower cost, whereas the error really cuts to the heart of liberty interest here because it could well have increased the sentence. So they said it's a different analysis, and that's why the court came to the holding on the third and fourth prongs of plain error review, but it also cited a line of Second Circuit cases that specifically go, in coming to those holdings, that specifically go to the second prong, where the Second Circuit has said, look, we take a more relaxed approach to plain error in the sentencing or in the guidelines context for the exact same reasons that the Supreme Court, I just gave you with respect to the Supreme Court, gave on the third and fourth prongs because of the reduced cost and because of liberty interest. And in those cases, that line of cases, there are a number of them where there was fairly complicated guidelines error that revolved at several-step analysis, and they nonetheless said, you know, in this context with the relaxed approach, we find that the error is plain. Counsel, let me ask you this. I know you would like to stay with the pure questions of law, but let's assume, arguendo, that our court finds that that's no longer applicable and you have to rely on plain error. I would say you probably have a legitimate argument that there's some tension between our 2450A1 precedents and Borden, but can we really say that the district court, in quotes, plainly erred in not concluding that they were irreconcilable? In other words, it's such a jumble. You're saying it's one thing, government says it's another. How can that be a plain error when there's so much uncertainty by your own account? In other words, how can your client win on the plain error concept? Well, I think the first answer to that question regarding the jumble of prior case law is that prior case law all came from three judge panels. The court is now sitting on Bonk. It doesn't need to wait. I understand that, but the bottom line is when the district judge looked at it, how could the district judge tell that it was plain error when there's so much confusion? You yourself have articulated very well why you think Borden changed everything, but we have case law that says exactly the opposite, so there's confusion. My question is, how can there be plain error and if there's no plain error, if we get away from the pure questions of law, doesn't your client lose on the plain error analysis because there is no plain error? Well, to begin with, I would suggest that, as the Supreme Court said in Henderson, that this isn't, you know, it's not a question of grading the district court judge's performance. It's a matter of affording relief when the demands of justice and judicial integrity call for it. That's almost the exact quote from Henderson. But I think Judge Smith's question is, looking at the Borden question now, it's difficult. So if it's a difficult and complex question that we'd have to settle, then it's not plain. Well, I would submit that it's not difficult, that particularly with the Borden clarification that it is really quite clear and that, you know, some legal questions maybe are more art than science, but this... But Borden was published in 2021 and Mr. Gomez was not sentenced until 2023. I'm just curious, why didn't his counsel, I don't know if it was you or somebody else, make these arguments before the district court at his sentencing, because it seems like Borden does clarify some what the situation is regarding this crime. It was not me, and I can't speak to why his counsel didn't make the argument. I would suggest that this is one of the reasons for pursuing a more relaxed approach here, because if you don't correct it, you're really creating a breeding ground for ineffective assistance of counsel cases. But coming back to the question regarding Borden, Borden gave some important clarification that did not exist in the case law before. It says there has to be targeting, the conduct has to be targeted, and that it has to be something above the Model Penal Code's recklessness, that is awareness and disregarding a substantial risk that physical force will occur. And it did something more than that, which is it gave some examples of what's not enough, and particularly in the recklessness context. It said that a commuter who runs a red light, rushing to work, and hits a pedestrian has made physical contact, has obviously disregarded a substantial risk, but nonetheless has not directed force at another. He's not trained his car at the pedestrian, understanding it will run him over, and his conduct is not opposed to or directed at another. He does not come in within the elements clause. Let me ask you this, because your time is short. I tend to agree with you that Borden provides some clarifications, and I think there were numerous examples given in the briefing, particularly the advocates' briefing, where a 245 conviction can be sustained when the defendant didn't even know that the victims were there. But I go back to Judge Smith's question. I'm not sure that I heard an answer or understood your answer, if you attempted to answer it, which is on whether the error is plain. In the government sentencing memorandum submitted to the district court, the government pointed to a panel, albeit in an unpublished disposition, so it's persuasive, not presidential, but the government's contention is, well, Borden didn't change anything. The Ninth Circuit recently looked at it and said Borden didn't change the question of whether 245 is a crime of violence. There wasn't a response from the defense that I could tell, and so the argument was really never played out in the district court. So I'm still struggling with the answer to the question posed by Judge Smith, which is how can the error be plain or obvious in light of the fact that different judges, circuit judges, are going different ways. We had an opportunity to pass on Borden in an unpublished disposition. We didn't agree with the argument that you're advancing. It's a good argument, and even if I'm inclined to agree with it, it doesn't answer the question of whether the error was obvious. How do you respond to that? Well, I think I'd start with where the panel, the original panel in this case started, which is that the panel was the same panel in Mann and Morton. There were two Ninth Circuit judges on it. Didn't undertake the analysis, both with respect to what more than reckless means under California law and what more than reckless means under Borden, and Borden said substantially more than that recklessness isn't enough. So they failed to undertake the analysis and then failed to come to the proper conclusion. So to give that non-precedential case effectively precedential effect to trump the Supreme Court's controlling case law on this when it didn't even undertake the appropriate- Right. I mean, I was on that panel. That is what we did, but we had to discretionarily apply de novo review in order to get there. We didn't do that. We didn't do that on a plain error analysis. I guess I have the same question as Judge Smith and Judge Nguyen just raised, but what do we do about all of these unpublished decisions that we have after Borden that reach an opposite outcome than what you're urging? Judge Thomas, I was not aware that you were on Mann and Morton. Oh, I'm sorry. On the original three-judge panel in this case. Okay. Well, again, I think that as the panel in this case said, Mann and Morton didn't undertake the correct analysis. They just didn't look-  So I think the effect of your argument is that even though different judges have taken a look at it, their analysis wasn't as in-depth as it should have been, and they got it wrong. But the district judge, sua sponte, should have gotten it right. Is that what you're saying? Well, again, I come back to Henderson. It's not a matter of the district judge should have sua sponte gotten it right. It's a matter of whether or not the error is plain at this point on appeal. Let me ask you a question about Borden, because Borden, in what it says about recklessness, has the line, and it puts weight on this, that the risk need not come anywhere close to a likelihood. That's in the standard that it rejects. But that's not true about California law, because it has to be that it will probably and directly result in physical force. So right away, there's a difference between Borden's articulation of what it rejects, and California, which is higher than what it rejects, at least in that respect. Doesn't that make this not a plain error? I mean, it's not plain to me how this applies to this somewhat unusual articulation of the elements of assault. Well, I would submit that Borden makes quite clear, and repeats more than once, that the defendant doesn't have to know that there's a substantial risk, doesn't have to even know that there's any risk that force will be applied. And as a matter of fact, the defendant can honestly believe that force will not be applied. But I would also come back, then, to the Borden example, where it says that the person, you know, the commuter doesn't know that he's going to hit someone, and is not targeting someone, and that's not enough. That doesn't fall within the elements clause. But California also requires that you have to know all of the facts that a reasonable person would know means that it's likely that the impact will happen. And that wasn't true of what Borden rejected. Well, in California, the amicus brief from the Federal Public Defender Office was outstanding. And it cited a raft of cases where the person doesn't know that the victim, as they call it, is even there, and is nonetheless convicted. And those, you know, the best ones of those were Cook, where someone's driving a car down an embankment, hits a jogger, doesn't see the person there. Flanagan, Drennan, doesn't see the alleged victim. And then there are a number of cases, too, where the person is convicted under California law for assault, and they're actually trying to avoid contact. The most interesting one of those was In Re LJ, where it's a juvenile, and they say, look, it doesn't matter that he's trying to avoid contact. This does not require – this conviction under this statute does not require targeting. That's the exact word that they use. So I think both by how – you know, I realize in the California case law, it's somewhat convoluted at times, but it is not convoluted when it says that the defendant doesn't have to be aware of substantial risk, and doesn't have to – and honestly can believe force will not be applied. But, see, that's the very problem that I have. You did a very nice job in your brief laying out these cases. Some of my colleagues have referred to them. But the question was, at the time the district judge looked at this, was the error plain? You've done an excellent job of arguing post-decision on the part of the district judge why it was plain, but you had all these voices saying, no, no, no, no, it's something else. What about this case? What about that case? All of which is perfectly legitimate, but it doesn't mean that at the time the district judge made the decision that it was a plain, plain error. Where the district judge would be able to look at this and say, boy, I got it wrong because the law is X. And you're saying, no, no, it's not X, it's Y. Somebody else says it's Q. Somebody else says it's X. That's not plain. And that's what I struggle with, is for your client, if we do away with the pure questions of law, how can we treat what the district judge had in front of him as plain error? Even to this day, you're articulating why, based on California law, it's something different than perhaps what the district judge said. My understanding of plain error is different than yours because I think it's got to be really, really obvious, and I don't think it was, given Borden and the other issues that have been brought up by the court today. Well, I think the best answer to your question, Judge Smith, is to come back to the fact that this is guidelines error, and the Supreme Court applies plain error differently in the guidelines context because plain error, the whole concept grew out of how to deal with trial error. When the plain error rule was promulgated in 1944, the guidelines didn't exist to the extent there were any sentencing appeals that were very different. And the Supreme Court has recognized that and said that this is, the guidelines error is different. It's the calculus between the cost of correcting it and the liberty interest that is different. With respect, counsel, at least my understanding is that whether it's part of the guidelines or the earlier definitions that the Supreme Court gave of plain error, you've still got to have something that's really obvious, and that's what I struggle with here. I don't think it is really obvious. For all the reasons that you've well articulated, there are lots of reasons why if this were a new issue, it might be different. But at the time that the district judge had it, it wasn't plain, at least based on my understanding of what plain error is. What am I missing? Well, I would submit that if it is purely legal error and the court has concluded in a binding or to be binding opinion that it is error, then that becomes beyond dispute. That is the law. And what was the case? As a matter of fact, the cases at the time, we had, I don't remember how many, I think one or two presidential cases, a number of non-presidential cases that had specifically found that the factual circumstances of your client did fit the category, and it was not a problem, right? There was pre-board and case law that held that 245A was a crime of violence, yes. So if there was an error, it would have been on your side, basically. But again, I don't think the Supreme Court or our court has said, basically, that plain error means that, yeah, you've got a few problems here, a few problems there, we don't really know what the law is, there can still be plain error. I don't think that's right. It has to be clear, this is the law, and if the district court does something different than that, then you've got plain error. But I don't think you have that here, do you? Well, I believe that I do, and I believe particularly because it's in the guideline context. And if the court is, if Your Honor isn't convinced based on Molina-Martinez and Morales-Rosales, if this court comes to a contrary conclusion, the court's approach and outcome will conflict with the Second Circuit cases, which... That's a different circuit. So, counsel, let me ask you this. What in your mind is the controlling authority on point for you here to say that there was plain error? I think the Supreme Court cases I've cited and their approval, their citing approvingly the Second Circuit cases, and also as a follow-on to my answer to Judge Smith, if this court decides that the error here is not plain, it will also be in direct conflict with the Second Circuit's recent Chodan opinion, which applied plain error review and found that the error was plain. And along the same lines, what I was saying, too, the Supreme Court... Is there any daylight between clearly irreconcilable and plain error? I don't think there is, and that is, of course, one of the things I argued in my response in opposition to the petition. The panel did a very nice job of explaining why its prior case law, its prior binding case law, published case law, was clearly irreconcilable. But if clearly irreconcilable is subject to reasonable dispute, does that affect your plain error analysis? I guess it seems to me the easy answer to that is if you find that Supreme Court case law is clearly irreconcilable with Ninth Circuit case law, you have decided the issue, and it becomes, at that point, beyond dispute. Someone can dispute it in a petition for writ of certiorari or whatever, but at that point it is decided, and it is a legal error, and it's not just a legal error, but a guidelines error. And the Supreme Court has indicated it treats those differently. And under Henderson, we look at plain error at the time of appellate consideration, right? That's correct. So would that at all affect your thinking about this, as opposed to when the district judge considered it? Well, I think that was part of my answer to Judge Smith, which is Henderson says, look, this isn't a grading system for district court judges. This isn't, I can quote it exactly, it says, Johnson makes clear that plain error review is not a grading system for trial judges. It has broader purposes, including, in part, allowing courts' appeals better to identify those instances in which the application of new rule law to cases on appeal will meet the demands of fairness and judicial integrity. So if it meets the third and fourth prong, that relief should be granted. And then the court goes on to respond to government's assertion that, well, if that's how you treat plain error, then all error will become plain error. And the opinion says, rejects that, and it says, many such new rules, if we pointed out concern matters of degree, not kind. And a lower court ruling about such matters say the nature of closing argument, even if now wrong, is not necessarily plainly wrong. And I think that points to an important distinction between pure legal error and mixed questions of law and fact, which is a legal error, you know, courts decide in the first instance what the law is, and then when they decide it, that's what the law is. I mean, we all count on that. Now, a mixed question of law and fact has more of a range of decisions. In the usual preserved error context, it relies on abuse of discretion standard. The test may be to be applied, say, to a 403 balancing situation, might be fixed law, but how the district court applies it has a potential range of answers. And in that context, it's much harder to make the plain error showing. But if it's just a legal question, particularly in the guidelines context … Some legal questions are very difficult to answer, and the answer isn't plain before it's resolved. But once it is resolved, they are. But it's not resolved. We would have to resolve it here. Yes. And looking at this question, it doesn't look very plain. It would be a lot of work to figure out the right answer. Well, I would submit, particularly if you look at the example with respect to recklessness, which is not enough, that's given in Borden, and you compare it to all those cases cited in the Meekus brief, where the person doesn't know the alleged victim is even present, or the person is deliberately trying to avoid making contact with the victim. This is a Venn diagram, where there is a huge area that does not overlap. But the only binding holding from Borden is that the kind of recklessness that it describes is not sufficient to be a crime of violence. I don't think that's correct, Your Honor, with all due respect. There's no overlap, no overlap whatsoever between the rationale of the plurality and Justice Thomas. So we can't look for the overlap and then reason from it. We don't have any common reason between the two of them. Well, I think as the government has conceded, Justice Thomas would take a more narrow approach to what could qualify as a crime of violence. So if you're looking at the commonality, it's the plurality opinion. I think this Court has accepted the plurality opinion as being controlling. You've mentioned Henderson a number of times and the rule that plainness is assessed at the time of appellate consideration, but you're not suggesting that it's assessed after the appellate court writes its opinion resolving the legal issue, are you? Well, I think if it's a purely legal issue and the court determines, in the context of deciding is there error, here's the persuasive arguments from unpublished opinions, law review articles, whatever source, and then decides. But then that, I mean, whether it's legal or factual, I mean, in the normal course, a court applying plain error goes through prong one and it gets to prong one and maybe it says there's no error and then you're done. But usually, I mean, in the case where this is going to matter, you get to the end of prong one and you say, you know, therefore we determined that there was an error. You know, now we turn to prong two. And I guess the way you read Henderson, it sounds like at that point, well, we just said there was an error. What could be plainer than that? Like, therefore, you always get past prong two, but that's not how it works, is it? Well, I think that Henderson indicates, suggests that it does work that way, but then I think to the extent that the court has concern about that, that's when I would focus in on the guidelines context and say, you know, is the Second Circuit's approach, as the Supreme Court did with the more relaxed approach to addressing error in this context, if it is a purely legal error, to say, well, geez, it was hard to figure out that it was a purely legal error doesn't seem to be an adequate reason under the Supreme Court's case law in this context to just say, well, we're not going to correct it. And an interesting point in that context is those Supreme Court cases, one of the things that they said, too, is in this context, we think that the prospect of sandbagging by the defense is so minimal as to be vanishing, and there is an independent duty on the part of the district court judge to get the guidelines correct. That is, at bottom, the district court judge's obligation. So those are additional factors that they relied on in this context to say that, you of the plain error review, in the guidelines or in the sentencing context. What difference do the guidelines make? I understand in our post-plain review analysis, as I look at it, there's lots to consider. The guidelines, board, and all these other things, but I still get back to the fact, did the district judge know, or should have known, at the time the decision was made that this was just absolutely right on, this is what the law was? I don't see it. I really don't see it. If there was a case from California that said, this is what it was, I get it. But at the time, it wasn't clear, it's not clear now, you've articulated these various views. I'm still struggling with the fact that where's the plain error at the time the district judge made the decision? At the risk of maybe being redundant, I would say the difference in the guidelines context is that the Supreme Court has said the guidelines context is different. Two best cases for that? Melina Martinez and Morales-Rosales. So there's the 2016-2018 Supreme Court cases, which deal with the third and fourth prong of plain error review. And then interestingly, the only three Supreme Court cases that deal with plain error in the sentencing context, the third one is Henderson, which came a couple years before that. All suggest... But what says that you can use a third and fourth prong factor to decide the second prong? What support do you have for that? Well, again, I just think it's the framework and the reasoning in those two cases, that the balance is different here, the likelihood of sandbagging is different here, the cost of correcting it, the liberty interest at stake, the fact that they cite the Second Are those cases directly on point on the second prong of Alano? No. But is the reasoning unassailable? In my view, it is. Well, you're very lucky that you're in California because Section 3537 of the Civil Code says, and I quote, superfluity does not vitiate. So you can take that one and work with it. I'll have to mull that one over. I'll reserve the rest of my time. Thank you. Good afternoon, Your Honors. May it please the Court. Alexander Robbins on behalf of the United States. The most straightforward way to decide this case is by applying the plain error rule. And the most straightforward argument that the government has is that Judge Graber, in her concurring opinion in Zhao, got this issue exactly right, identified the problems with this exception, and that is what we are asking the Court to rule on primarily today. We don't suggest that there was any plain error one way or the other in the panel's decision. And I'm happy to address the crime of violence categorical approach issue at length, but I don't think it's a reasonable contention that the panel in this case plainly, clearly, obviously erred, nor is it a reasonable contention that the government's position in this case was plain, clear, or obvious error. And that's the function of the plain error rule. It is to winnow down the range of what a three-judge panel in a future case, taking its guidance from this Court today on what the rule is supposed to be, what that three-judge panel has to deal with, how deep a dive it has to go into the record, into the law for judicial efficiency and the administration of justice in all the future cases in this circuit. Sotomayor, I guess I'd like to ask you, even after Borden, which was decided before the sentencing in this case, you don't – what's your position on whether Borden clarifies sufficiently this dispute? Our position is, I would refer the Court to footnote 2 of Borden itself, where the Supreme Court lays out the circuit split that it's addressing and resolving, specifically identifies not just this circuit as being on the correct side of the split, but actually cites the panel decision in Begay as the decision where the Supreme Court says that's the correct answer and that's the way the Court ultimately came out. Borden is, with one exception, completely consistent with this Court's longstanding case law going back to Fernandez-Ruiz in its treatment of the distinction between purposeful and knowing conduct on one hand and reckless conduct on the other as falling below the line for crimes of violence. The only exception is that Borden actually expanded the scope a little bit because Fernandez-Ruiz said reckless conduct never qualifies. Borden said normal, ordinary recklessness, model penal code recklessness does not qualify, but we reserve the option in a future case maybe depraved heart extreme recklessness might qualify, and that's the door that this Court walked through in  And I think as an example, I find it helpful to think of examples of these cases. Everyone agrees that drunk driving as a crime of recklessness is not a crime of  violence. That was the main issue in the oral argument in Borden and this Court discussed in the oral argument in Begay. Drunk driving, as dangerous and bad as it is, is not a crime of violence because it's not force directed against anyone. By contrast, in Begay, at the end of the opinion in Begay, this Court identified driving drunk the wrong way down a crowded thoroughfare as an extreme recklessness example that would meet the standard. And just going back to the logic of Borden, it's easy to say that drunk driving is a crime of recklessness, and it's easy to see why, because in that second case, there are potential victims. Driving into a crowd, shooting into a crowd, is not the same as driving recklessly or firing a gun into the air. There's an oppositional nature, as Borden says, a directedness or a targetedness to the use of force. So Borden didn't change this Court's case law, and that's our view on the merits. I just wanted to find out your view. Does Borden's targeting requirement change the way we apply the categorical test in a section 245A1 case? I'm sorry, I may have missed the first part of your question. Does Borden's targeting requirement, or do you think there is a targeting requirement in the Borden? Absolutely. Okay. So does that change the way we apply the categorical test in a section 245A1 case? Not at all, because this Court was on the same page with Borden at least 15 years earlier in Fernandez-Urbiz, including some of the same logic of Borden. They discussed LeoCal as the classic negligence case of something that doesn't satisfy the oppositional targeted nature of the requirement. What do we do with the California cases, though, that say you don't need to target to be convicted? I respectfully disagree with the premise of the defense argument on that point. But so I have two responses. So you read the California cases differently? I read the California cases as requiring, in particular Williams, as we set forth in our petition, as requiring purposeful or knowing conduct within the terminologies that's used in the Model Penal Code. To the extent that California law has this admitted peculiarity of discussing the natural and probable direct consequences of one's action, that is, first of all, not sufficient. That's not the same thing as adjusting the mens rea below the knowing and purposeful standard. But second, it's an issue that this Court, and actually the Supreme Court, have dealt with years ago. Vasquez-Gonzalez deals with this specific issue. If you look at 1067 in Vasquez-Gonzalez, it discusses, Judge Clifton's decision discusses the probabilistic language in the California cases, and in Williams in particular, and rejects the very argument that the defense is making in this case. So even if I were wrong about my read as a non, as a Federal practitioner, even if I were wrong about California law, it's an issue this Court has already decided. But in footnote 4 of Williams, it says, in stating that reckless conduct cannot constitute an assault, citing Colantuono, it says, Colantuono meant reckless in its historical sense as a synonym for criminal negligence, rather than its more modern conception as a subjective appreciation of the risk of harm to another. So that is specifically saying the targeting that our Chief just referenced. I appreciate the loose language in Williams, and I would respond with two places for the Court to look. It's pretty specific and not loose to me. I would refer to the Court, I would refer to the Court to two things. First of all, our petition for rehearing, I believe on page 17, and I think this is the key with respect error in the panel decision, was conflating the intent to do the act with the intent to cause harm. And as Justice Kagan's opinion in Borden lays out, that's the difference between purpose and knowledge. And so in particular, this Wyatt case, the California case that the Gomez panel discussed, in Wyatt, the defendant intentionally hit his young son, his toddler, I think, but at least his claim was, or maybe the government couldn't prove, that he intended to cause injury to, to cause harm to his son. That is still intentional violent conduct under Borden, under the model penal code, under this Court's decision in Fernandez-Ruiz. It's the distinction between knowledge and purpose. And if you go back to the original crime of violence case, Johnson, not the plain error one, but the crime of violence one, force means offensive physical contact capable of producing bodily harm. The thing that needs to be intentional is hitting your son, not trying to cause harm to him. What about the California Court of Appeal decision in LJ, where, I think they said he was trying to drive around the car and he ran into the car unintentionally, but that was enough for assault? I don't have a good response to all the California Court of Appeal decisions other than to say that they correctly identify this ambiguity in Williams. And that Williams, first, is the binding case that this court needs to take from the state of California. And second, and this is the second point I didn't get to and I apologize, Vasquez Gonzales expressly addresses this issue. This court, this is not a new question before this court, what to do with Williams. Vasquez Gonzales on page 1067 says, I'll just read it, Vasquez argues that 245A1 can be satisfied by negligent and therefore unintentional conduct. There, however, we disagree. Section 245A1 is an assault statute and the Supreme Court of California has expressly stated that the mens rea for assault in California requires more than negligent conduct. Quote, mere recklessness or criminal negligence will not, sorry, is still not enough. That's quoting from Williams. And then the court goes on to say, in the next page, that Vasquez seizes on language regarding probability used by the California Supreme Court in Williams. For example, the court explained that assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably indirectly result in the application of physical force. According to Vasquez, this probabilistic language defines a negligence mens rea. And the court then goes on to explain why that's not true. So the Tenth Circuit, relying on Williams, found that there was not a categorical match. So are you encouraging us to create a circuit split or maintain a circuit split? I think the maintain a circuit split, the Tenth Circuit in Jodin is just wrong for the reasons that we have given in our brief, but also as we point out in our 28-J letter, there was no meaningful application or really any textual application at all of prong to a plain error in the Tenth Circuit's decision. They said the phrase prong to in a heading and then never actually addressed it. I think it is very, I'm very confident in at least this much of the government's argument that there is no way that a reasonable jurist could look at this merits issue and think that it's clear or obvious one way or another. Obviously, that's up to you, Your Honor. If we were to find clearly irreconcilable based on Borden, Castillo, which your opposing counsel cited, says that, well, if there's a Supreme Court case that is clearly irreconcilable with our precedent, then that's error under either a plain error standard or a de novo standard. So why shouldn't we follow Castillo here if we think that Borden is clearly irreconcilable with our precedent? I'm very glad you asked that because I had a note to address this issue that came up with my opposing counsel. I think the premise is wrong that if you have the Miller v. Gamey standard on one hand, which requires clear irreconcilability, and then you have prong two of the plain error standard that also requires clear obvious error, that those become the same and so it doesn't make any difference. I think as a logical matter, if you have two different threshold standards to pass, it would be clear squared, not just the same. And as a legal matter, in the most analogous case I can think of in the habeas context, the Supreme Court has repeatedly said that there's a doubly deferential standard. When you're looking at one deferential standard, for example, an IAC claim, through the lens of a second deferential standard, such as review of State court decisions, so you need to satisfy both of those. It would need to be clearly clear to the extent that that has additional meaning. It's harder for the defense to meet that burden. And even if we get to that point, Judge Koh, that means we're applying the plain error rule, which I do want to come back to because that is the primary issue here that the government is seeking en banc review of. We understand that Your Honors have to fly from all the different locations in the circuit to be here to meet for an en banc court. It's not the job of the en banc court even to do justice in an individual case. That's the district court primarily, as supervised by a three-judge panel. This Court, we ask to make a rule that is the right rule and a fair rule for all future cases in the circuit, so that three-judge panels know what the rules are and so that litigants in district court know what the rules are. And as a matter of — Can I follow up on one thing that we've been focusing on, plain error with good reason? I assume it's the government's position that you would like us to overrule our, in quotes, pure question of loss exception? Yes, and that's what I was getting at, Your Honor. Our primary reason to be here today and our primary ask of this Court is we think this is a case where, without conceding whether it would have made a difference or not in Castillo, if the Court at least said it wouldn't have made a difference in Castillo. This is a case where, very clearly, application of L-non of the plain error test makes a difference. And the reasons Judge Graber gave in Zhao and based on three main factors, this Court should overrule its pure question of law exception. It's inconsistent with the text. It's inconsistent with Supreme Court precedent. And frankly, it's unfair. It's not just the administration of the laws. So starting with text, all right, Rule 52B is a rule. It's binding in conjunction with Rule 51, which generally says you don't get review unless the issue is raised. It's a binding rule that this Court should follow. There's been no textual defense of this pure question of law exception that I've seen ever, anywhere, from a law review article, from a separate opinion. No one has sought to give one, I think, because there isn't one to give. Second. I guess I'm still struggling with, it's your position that it's not clear error to follow precedent that has been overruled by the Supreme Court. Is it your position that it's error, it's just not clear error? Or that's what I'm still struggling with. Our position is not that there was clear error here. Our position is that there's, our position is the panel opinion was wrong on the merits, but certainly not clearly. Well, I'm just giving you a hypothetical then. Oh, I'm sorry. Let's say there is, let's say there is a case, Castillo, let's just be hypothetical, Castillo, that if you follow precedent that's overruled by the Supreme Court, that's error. Would you agree with that? That if you follow precedent that's overruled by the Supreme Court, that's error? Yes, of course. You agree that's error? That's Miller v. Gamey. But what flavor of error is that then? Is that? Depends on the precedent. I mean, it's, Miller v. Gamey sets out a standard for how to do that, right? Putting aside the plain error rule, assuming all arguments are preserved, this Court has a standard for how to deal with precedent that is either overruled directly or implicitly by the Supreme Court. That standard is Miller v. Gamey. We, no one quibbles with that standard. That's a separate bucket. That is not the same thing as the plain error test. You have to get through that and prong to a plain error and the other prongs to a plain error test in order to reverse a district court decision that followed law. If we look at an unsettled question in light of a new Supreme Court case and we think that the application of the new Supreme Court case is a slam dunk clear answer that our prior precedent has to go, that that would meet the plain error prongs one and two? Yes, and the Supreme Court, I was going to get to my, I made my textualist argument. My second one was going to be looking at how Supreme Court precedent has dealt with questions like this. So in Henderson, we cite Cotton and Johnson, not the crime of violence of the other Johnson. Those three cases all involved purely legal questions where the Supreme Court applied the plain error rule and I think in all those cases decided that the error, based on an intervening Supreme Court decision, the error was plain. It satisfied prong two. The Supreme Court applied plain error and said that, well, the Supreme Court tapia plain error. For example, the Supreme Court decided that you can't increase someone's punishment for the purpose of rehabilitation under 3533A. Supreme Court says that very clearly, overrules most circuit precedent and then the case comes up and says, yes, that's clearly irreconcilable and that's plain error. And to get to this temporal issue, Judge Koh and Judge Smith both mentioned, we understand under Henderson, the plainness of the error is evaluated at the time of appeal. So, yes, plain error looks from the point of view of the district judge, what a competent district judge have made this mistake, but you do import the later law from the time of appeal. It doesn't make a difference in this case. Nothing happened legally between the district court proceeding in this case and the panel decision in this case. So, yes, Henderson is there and has this temporal piece to it, but it doesn't matter here. Let me ask you this. You've cited to numerous cases like Vasquez, Gonzales, and some of the other cases that really tried to match up our law with the 245 conviction, and I think this is a difficulty that judges really struggle with the categorical approach. We're trying to use the lingo of how state courts describe their elements and then trying to match that to the crime of violence language. Now, those cases that you cited all preceded Borden. So, you know, the three-judge panel decision in this case I thought did a thorough job of analyzing why that line of case law is no longer viable in light of Borden, you know, whether you agree or disagree with that. I think that to your earlier point that the litigants could benefit from some explanation going forward, if we decide that, well, this categorical approach thing, it's hard and judges struggle with it. If we cast aside the de novo pure question of law exception and go with plain error review, what do we do with the fact that the parties could really benefit from some explanation of how Borden is reconciled or not reconcilable with the prior case law? With this panel, I'm trying to be very specific and very practical here. I don't want to tell the Court how to exercise this discretion. The government's primary quest is to, with this decision, put to rest the ill-conceived pure question of law exception. However, to the extent...  We're going to do that. We're going to address that. Fast-forwarding to the merits... Then what do we do after that as a practical matter? If the Court wants to address the issue, since it's already done the work and read the briefs and understands the issue, I think this Court should address the issue and, with respect to the panel's decision, decide it in the government's favor for the reasons we've already discussed, that Borden didn't actually change this circuit's precedents and use the same recklessness, knowledge, purpose, model penal code definitions that have been around for decades, that the prior decisions are not at all inconsistent with Borden. In fact, the Supreme Court said it was siding with the Ninth Circuit side of the circuit split in the beginning of its opinion, where it lays out the reason it took the case on certiorari. I gather it's the government's position that if we do away with the pure question of law and get to the plain error question, that our panel can decide this. There's no need to resend this back to the three-judge panel or, for that matter, the district court. Is that correct? I agree with that, Your Honor, yes. Again, it's your court and it's your discretion, but that seems like it certainly has some common-sense appeal. It makes sense for judicial efficiency in this case. But I would go back to judicial efficiency in all the other cases and just get to my third reason. We have the text of the rule, we have the Supreme Court's precedent, in particular Henderson, which even though it was sort of a ruling in favor of the defense in terms of this temporal aspect of when you look at the time of decision, it said we're not opening the floodgates to infinite plain error claims here because we still have prong two. Henderson preserved prong two as one of the floodgates. Counsel, I think there's really two bodies of law that we're looking at to decide the categorical match question, right? There's the federal law and then there's the California law. And a lot of the dispute, I think, about whether there's a categorical match has to do with how should we read California law and how the California court's been interpreting the statute. So under Henderson, I understand you're arguing that there was sort of no intervening change between the time the district court looked at this issue and asked what if there was development in California law in the time that made the error more plain? Is that something we could consider under Henderson? I think so, yes, if there had been. Because ultimately, I mean, sort of we're discussing earlier the two different standards. They both have the word clear, but you have prong two, and then you have this other miller v. Gamey clear. It's the same question. You have this court from California law to this court's interpretation of California law, and then you have a separate legal step to match it up under what the federal law is here. And so you could have a change in federal law, a la Borden, or you could have a change in California law, for example, a new Supreme Court of California case. I mean, courts, court of appeal, court of appeal, I think they use a singular. California courts, you know, coming to different decisions, that doesn't, we, this court has said that we have to take the California Supreme Court at its word when it says this is the law of the state of California. But if you had a new California Supreme Court decision that, you know, undid Williams and said, no, now we are going to allow a lower standard than purpose or knowledge for 245, that would be a change in the law. There's no rule against that. We just don't have that here. I just want to clarify, make sure that I understand your position. So what you're asking the panel to do is to eliminate the pure question of law exception to plain error rule. And then you said that the panel could, if it chose to, go ahead and answer the question that Borden didn't change or prior precedent that 245 is a crime of violence, right? That is correct, yeah. So let me, let me just ask you a question on your position on the merits. What do we do with the fact that Borden requires some sort of purposeful targeting of the victims and the plethora of State court cases that sustain a 245 conviction even when the defendant didn't know that the victim was present or was trying to avoid the victim, how do we reconcile that with respect to your merits argument? I think, Your Honor, to some extent that's, I would push back on the premise that there's a plethora of California cases allowing accidental conduct to qualify under 245. We, in our petition, and I don't know the, off the top of my head, I think it's around Well, there are examples, right? There are four cases. 245 is a very common State court, California State court conviction. And so there's going to be a range of conduct in which a 245 conviction can be sustained. Some involving, as you say, closer to the begui situation with a really extreme recklessness and then others something less than extreme recklessness. I mean, we, we, you know, we can't, we can't reinvent the wheel, but we did our best to respond to the California cases that the defense relied on and pointed out. So in 16 and 17 of our petition, we go through Lopez, Wyatt, Azur, one that starts with an A, Aznavalli, and one other case, and explain how all three of them are actually intentional cases. I'm sure without knowing more that there is some case somewhere in the State of California that misapplied Williams to something that this Court and all of us, the parties here would think actually was intentional, or I'm sorry, was unintentional conduct, because that's the nature of the judicial system anywhere. All I know is that the cases the defense has relied on in this case and cited in their brief set forth intentional conduct. Like the Wyatt case with the father hitting his son, not intentionally, not intending to cause harm, but intentionally hitting his son. The mistake there was between knowledge and purpose. Those are both intentional types of conduct. Father hitting your son, even without intending to cause harm, is still an intentional application of force. And I do want to come back to point this Court to the Supreme Court's decisions in Greer and Davis. I know we cite them in our brief, but I think they're instructive. I actually think that, and sometimes people ask what's your best case, Davis, the summary pure curiam decision in Davis by the Supreme Court might be our best case on this issue because it's the mirror image of this case. The issue in Davis was that the Fifth Circuit had created essentially the opposite rule here. The Fifth Circuit had said that when questions are purely factual, we're not going to apply plain error at all. We're not going to even hear your claim. You should have raised it below. So no plain error for you. And the Supreme Court on the summary calendar said, no, your job is to apply Rule 52B as written. There's no special exception for factual questions or purely factual questions that gets you out of plain error. It's almost exactly the mirror image of this case. And it was disposed of simply in a very straightforward manner. The Fifth Circuit doesn't get to have a special exception for questions of fact. No circuit, including this circuit, should have a special textless, without basis exception for pure questions of law for all the reasons that Judge Graber gave in her trial opinion. And as a third thing, I do want to say that this is not a rule that is administrably fair to judges and litigants across the circuit. There's nothing fair systematically about the idea that in your case, you may or may not get de novo review of a claim that wasn't made below based on whether the panel in its discretion applies essentially a standardless, judge-made exception to a binding rule. That's not fair to litigants writ large. And this Court's job sitting en banc is to make a rule that we can, Mr. Burns and I and all the litigants in this courtroom, can use in all the future cases before three judge panels, before many of you in this circuit, to know what the rules are and have a rule we can rely on and predictably apply to the cases that we have to deal with in our attempt to do justice in this circuit. Can I ask you a question about the enumeration clause of the career offender guideline where it enumerates? So we've said in a prior case, and you worked with it, that aggravated assault there refers to federal generic aggravated assault. Yes, sir. Why should that be true? The guidelines have a definition of aggravated assault. Why shouldn't we use the guidelines definition? It's a guidelines term. It's not from the statute. They added that to the guideline as a matter of their discretion in interpreting the phrase. I think that, and if you disagree with me, it is what it is, but my understanding of the enumerated offense clause issue in this case is it ends up, because of this issue about California law intent, collapsing back on the 16A use of force clause. In other words, if the mens rea is as the defense says it is, that would undo the enumerated offense analysis as well as the Rule 16A analysis. Obviously, Your Honor may have a different view of that. You think they stand or fall together? I do think they stand and fall together, and that's why we're focusing on the use of force, the 16A elements clause analysis, because I thought you were suggesting it was an alternative argument, but now you're saying they stand or fall together. We made it as an alternative argument before the panel decision, because there were other issues. We made it as an alternative argument before the panel decision. I think now that we're where we are, where the issues have been sort of joined and narrowed as to this Borden-Vasquez-Gonzalez California law issue, they end up standing or falling together. And also, with respect, just to address one issue that you brought up, the government does agree at this point that the Borden plurality with Justice Thomas's join is the controlling opinion. That's what this Court said in Begay. This Court used that in Begay. And also, I understand there's some ambiguity in how the Marx rule applies, but if it's use of force on one hand you should take part of the rationale that overlaps, and there is no overlap. I thought about this when preparing for this argument. The Borden plurality says use of force against another, and in talks most of the time about against another, but the phrase only means something if you take the whole phrase, use of force against another. Justice Thomas said, no, no, you don't need the against another part. Use of force is enough. Applying the Marx rule to that, the plurality is a logical subset. And also, that's what this Court already held in its en banc decision in Begay. And again, we don't shy away from Borden because Borden is completely consistent with this Court's case law, and on the merits we think that's the right outcome as well. But we do primarily ask this Court to give us a plain error rule, to give the parties, frankly, sometimes the government is appellant, a plain error rule that is clear and grounded in the text and administrable in all the future cases in this circuit. Are there no more questions? Thank you, Your Honors. I'd like to start with some questions that Judge Koh was asking about. And I'm not sure where government counsel came out on this, but with respect to the relationship between the clearly irreconcilable analysis and the second prong of Alano's test, I submit that the clearly irreconcilable analysis comes at the first prong. Is there error? You have to decide if, specifically, if there's an error in the first prong. Supreme Court case law is clearly irreconcilable with prior Ninth Circuit case law to decide if there's error. And then it just so happens, in cases where you do that, if you've gone through that process, the second prong is already solved. The error is clear. There's no daylight between clearly irreconcilable and clear, plain error, and the government has never pointed to any. Regarding a question that Judge Merguia asked about, and I think it also goes back to something that Judge Collins was asking me about, is did Borden just say, look, it's got to be more than reckless, or was there something more to it? I'd submit that the primary holding of Borden was the statutory construction, that there must be targeting, and then targeting informed, you know, that reckless isn't enough. But it's the targeting holding that is key, and it's obvious under California case law that targeting is not required. It doesn't sound like intent, and that's — Borden says it can be intent or knowledge. Well, Borden says — Because knowledge may — I know I'm going to hit him, but I may not be targeting him in a purposeful sense. Well, Borden says knowledge or purpose, and it says, look, there may — in most cases, there's probably no distinction, because at the lower level of knowledge, you're trying to make a getaway, the getaway driver is driving, and there's someone in his way, and he's going to run that person down. Now, it's not like the reviled neighbor that he wants to run down, but he's going to run him down. He knows it's practically certain he's going to hit that person. He's targeting his car at that person. So they're almost indistinguishable, as the Supreme Court indicated, except maybe when intoxication defense is allowed for — or not allowed. The — But in California, where you have to know the facts that will — are likely to result in hitting him. So every reasonable person looking at this knows, if I do this, I'm going to run this guy down, but I pretend I don't know he's going to go. But California case law makes clear you don't have to know that, for example, the person is there, because there's a number of cases that say that, including Cook, Flanagan, and Drennan. You have to know what your conduct — the nature of your conduct is, what you're doing, but you don't have to know the person's there. Furthermore, you can be — if you do know the person's there, you can try to be avoiding them, which is not targeting. And again, there are a number of cases that say that — In re, LJ, Sewell, Tucker, a case from this court in a 1983 context, Barrett, where a person is trying to avoid a police officer and back up and runs over their foot. I mean, the cases are legion. And the fundamental problem is that the prior analyses of these has just — it's been too simplistic. It said, look, Williams says more than reckless, and Fernandez-Ruiz says more than reckless. So there's nothing to see here. But Williams makes crystal clear in his footnote when it says more than reckless, it is not referring to the modern conception of recklessness meaning a substantial — knowledge of a substantial and unjustifiable risk. It is referring to criminal negligence. It couldn't be any more clear. And Williams doesn't apply the model penal code definition. And it also says in another footnote, a person who is honestly — believes that they're not going to apply force is guilty. Now, there's a lot of muddled language in there, but those — that language is crystal clear. And how the courts have applied it is crystal clear. It sweeps up a whole lot of conduct that is not violent in nature, as the Supreme Court defined it in Borden. Thank you very much. Appreciate it. Mr. Burns, Mr. Robbins, thank you for your oral argument presentations here today. The case of United States v. Gomez is now submitted, and we are adjourned. Thank you. All rise.
judges: MURGUIA, GOULD, SMITH, NGUYEN, NELSON, MILLER, COLLINS, KOH, SUNG, THOMAS, ALBA